`UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Entropy Solutions, LLC,  Civil No. 18-3123 (DWF/DTS)

          Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

Stasis Group, Inc., Michael Cecchini,
Robert Morton, and Jose Radzinsky,

          Defendants.

_____

Brandon J. Wheeler, Esq., and Ryan A. Olson, Esq., Felhaber, Larson, Fenlon & Vogt, PA, counsel for Plaintiff.

Laura Brooks, Esq., Loren M. Solfest, Esq., and Matthew J. Schaap, Esq., Dougherty, Molenda, Solfest, Hills & Bauer P.A., counsel for Defendant Michael Cecchini.

Mark H. Thieroff, Esq., Siegel Brill, P.A., counsel for Defendant Jose Radzinsky.

## INTRODUCTION

This matter is before the Court on Defendant Michael Cecchini's ("Cecchini") Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue. (Doc. No. 4.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Entropy Solutions LLC ("Entropy" or "Plaintiff") is a Minnesota limited liability company with its principal place of business in Plymouth, Minnesota. (Doc. No. 1, Ex. 1 ("Compl.") ¶ 1.) Plaintiff is in the business of making Entropy PureTemp

phase change material ("PCM"). (*Id.* ¶ 9.) Defendant Stasis Group, Inc. ("Stasis Group") is a Delaware corporation with its principal place of business in Albuquerque, New Mexico. (*Id.* ¶¶ 2, 3.) Stasis Group is in the business of developing PCM applications, engineering, and proprietary modeling software, focusing on PCM's use in multi-story building products. (Doc. No. 7 ("Cecchini Decl.") ¶ 9.) Cecchini is the Executive Vice President ("EVP"), Chief Operating Officer ("COO"), and 50% owner of Stasis Group. (*Id.* ¶¶ 4-5.)[1] Cecchini resides in Placitas, New Mexico. (*Id.* ¶ 3; Compl. ¶ 4.)

In April 2016, Entropy and Stasis Group began discussing a possible business relationship with respect to PCM. (Cecchini Decl. ¶ 11.) Discussions regarding the relationship and potential Project Agreement occurred primarily by phone and e-mail between representatives of Entropy in Minnesota and representatives of Stasis Group outside of Minnesota. (*Id.* ¶¶ 19-20.)

On June 7, 2017, Entropy and Stasis Group entered into a formal "Project Agreement." (Compl. ¶ 9, Ex. A ("Project Agreement").) Morton signed the Project Agreement on behalf of Stasis Group. (Cecchini Decl. ¶ 14.) The Project Agreement memorialized Entropy's agreement to fund, and continue to provide minimum additional funding, to Stasis Group, who in turn agreed to use the funds for the production of

---

[1] Defendant Robert Morton ("Morton") is the President, Chief Executive Officer, and co-owner of Stasis Group. (Compl. ¶ 5; Cecchini Decl. ¶ 7.) Morton resides in California. (Compl. ¶ 5.) Defendant Jose Radzinsky ("Radzinsky") was an officer and board member of Stasis Group until January 2017. (Cecchini Decl. ¶ 8.) Neither Morton nor Radzinsky join the present motion.

prototypes that incorporate Entropy's PureTemp PCM into new building products, related product testing, and software modeling development for the project. (*See* Project Agreement ¶ 1.) In addition, the Project Agreement contemplated future negotiations of a mutually exclusive supply agreement, among other things, if final third-party validation testing resulted in "proof of concept" acceptable to Entropy. (*Id.* ¶ 2.) Finally, the Project Agreement provided that it is to be governed by and construed in accordance with Minnesota law. (*Id.* ¶ 10.)

Cecchini submits that he communicated with principals of Entropy over the phone three to four times and via e-mail roughly six times regarding the Project Agreement, and over the course of the relationship with Entropy, he communicated with Entropy in roughly twenty-five e-mails and ten to fifteen telephone calls. (Cecchini Decl. ¶¶ 12, 19, 20.) Cecchini further contends that none of these communications involved his participation in an individual capacity and that he has never been to Minnesota. (*Id.* ¶¶ 16, 20.) Entropy claims that Cecchini was directly involved in negotiating and overseeing the performance of the Project Agreement, and that Cecchini engaged in more than a dozen phone calls and at least 260 e-mails with Entropy in Minnesota. (Doc. No. 13 ("Servais Decl.") ¶ 3.) Entropy submits that these communications covered various topics, including the requested delivery of funds, the discussion of test results and budget issues, as well as negotiations following the "proof of concept." (*Id.*)

Upon completion of the validation testing, which was conducted in California and New Mexico, the parties disputed whether the results supported moving forward with the Project Agreement. (Compl. ¶ 13; Cecchini Decl. ¶ 15.) Entropy then sued Defendants,

3

alleging the following claims: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Attorneys' Fees and Costs; (4) Piercing of Corporate Veil/Alter Ego; (5) Money Had and Received; and (6) Unjust Enrichment. (Compl. ¶ 8-37.) Entropy filed this action in state court, and Cecchini removed it to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 and venue pursuant to 28 U.S.C. § 1441. (Doc. No. 1 ("Notice of Removal") ¶ 11, 13.) Cecchini now moves to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the action to the United States District Court for the District of New Mexico. (Doc. No. 4.)

## DISCUSSION

### I. Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, a court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the

plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King*, 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418-19 (1984)). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). The third factor distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 522 n.4 (citing *Wessels*, 65 F.3d at 1432 n.4).

Cecchini argues that the Court lacks personal jurisdiction over him. In support, Cecchini points out that he is a resident of New Mexico, has never been to Minnesota, is

not a party to the Project Agreement, and that his contacts regarding the Project Agreement are limited to telephone calls and e-mails regarding the substance of the Project Agreement and later, product testing. Cecchini argues that these contacts are insufficient to meet minimum contacts requirements and would offend traditional notions of fair play and substantial justice. Entropy, on the other hand, asserts the opposite—that Cecchini's contacts with Minnesota are such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. Entropy points out that from March 2018 through May 2018, Cecchini, as a co-owner, EVP, and COO of Stasis Group, sent at least 260 e-mails to Entropy's Vice President of Operations that related directly to the Project Agreement. (Servais Decl. ¶ 3.) These e-mails include requests for funds from Entropy, discussions regarding Stasis Group's performance under the Project Agreement, such as test results, budget issues, as well as negotiations regarding the parties' relationship following "proof of concept." (*Id*. ¶¶ 3, 6-9, Exs. C-F.)

The Court first considers the nature, quality, and quantity of Cecchini's contacts with Minnesota. While a contract with a citizen of a State alone is insufficient to establish minimum contacts, the Court evaluates prior negotiations and contemplated future consequences, along with the terms of the contract, to determine whether a defendant purposefully availed himself of a particular forum. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015). Here, Morton, on behalf of Stasis Group, reached out to Entropy in Minnesota to seek a supplier for PCM (Cecchini Decl. ¶ 11), after which Cecchini had ongoing contact with Entropy in Minnesota, via e-mail and telephone. These contacts include negotiations regarding a potential contract

with Entropy, the execution of the Project Agreement, and the contemplation of the future performance of a mutually exclusive supply agreement in Minnesota. Moreover, the Project Agreement, which is at the heart of the litigation here, was signed by Entropy in Minnesota, before Morton signed the Project Agreement on behalf of Stasis Group in California. (*Id*. ¶ 14.) The Project Agreement itself memorialized Entropy's agreement to fund, and continue to provide minimum additional funding, to Stasis Group, in return for product development and testing. Finally, the parties chose Minnesota law to govern the Project Agreement.

The Court also considers the relationship between the causes of action and Cecchini's contacts with Minnesota. Entropy asserts several causes of action, including breach of contract and breach of implied covenant of good faith and fair dealing, attorneys' fees and costs, as well as claims for piercing of the corporate veil/alter ego, "money had and received," and unjust enrichment against all Defendants, including Cecchini. These claims directly relate to Cecchini's contacts with Entropy in Minnesota.

In addition, the Court considers the final two factors, which are accorded less weight in the Court's analysis. Minnesota has an obvious interest in providing a forum in which Entropy, a Minnesota company, may litigate its claims. *See Northrup*, 51 F.3d at 1389. In addition, the convenience of the parties favors jurisdiction. A plaintiff is normally afforded its selected forum and, as discussed below with respect to the Court's analysis of the motion to transfer, some witnesses and evidence are located in Minnesota while other witnesses and evidence are located outside of Minnesota. Any inconvenience

to Cecchini in litigating in Minnesota would be similarly experienced by Entropy if it were required to litigate in New Mexico.

Based on the record before it, the Court concludes that Entropy has made a prima facie showing that Cecchini is subject to the specific jurisdiction of the Court. Cecchini's contacts with Minnesota are not random, fortuitous, or attenuated. Instead, they demonstrate an intentional relationship between Stasis Group and Entropy (a Minnesota company) as well as an effort by Stasis Group to initiate contact with Entropy in Minnesota. The record also shows that Cecchini purposefully directed his activities toward Minnesota and are of a quantity and quality supporting a reasonable expectation that he could be haled into court in Minnesota in a dispute related to his and Stasis Group's relationship with Entropy pursuant to the Project Agreement. Finally, while the existence of a Minnesota choice-of-law provision does not alone establish jurisdiction, such a provision can "provide evidence of a defendant's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011) (quoting *Burger King*, 471 U.S. at 482)). The Court therefore concludes that the nature, quality, and quantity of Cecchinis's contacts with Minnesota favor the exercise of personal jurisdiction.[2] The Court recognizes that Cecchini's contacts with Minnesota may not rise very far above the

---

[2] The fact that Cecchini did not physically enter Minnesota is insufficient to permit him to avoid the Court's exercise of jurisdiction. *See Burger King*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State."); *Bulk Process Equip. v. Earth Harvest Mills, Inc.*, Civil No. 10-4176, 2011 WL 1877836, at *4 n.2 (D. Minn. May 17, 2011).

minimum contacts necessary to establish jurisdiction. The Court's task, however, is not to determine the "best" forum for a suit, but to determine whether sufficient minimum contacts exist so that a suit against Cecchini in Minnesota does not offend traditional notions of fair play and substantial justice. Such contacts exist here. Therefore, the Court denies Cecchini's motion to dismiss.[3]

## II. Motion to Transfer

Cecchini also moves, in the alternative, to transfer this action to the District of New Mexico pursuant to 28 U.S.C. § 1404(a). That section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding a motion to transfer pursuant to § 1404(a), the Court must consider the convenience of the parties, the convenience of the

---

[3] In so concluding, the Court notes that this case is distinguishable from *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014), a case relied on by Cecchini. In *Fastpath*, the Eighth Circuit Court of Appeals affirmed the dismissal for lack of jurisdiction based on a lack of significant contacts and where the forum State's connection to the relevant agreement was incidental at best. 760 F.3d at 824. In that case, two businesses in the market of security software (one in California and one in Iowa) executed a confidentiality agreement with a covenant not to compete in order to facilitate the exchange of information for the purpose of discussing a potential partnership. *Id*. at 819. The parties negotiated a confidentiality agreement, sent several "scattered e-mails," but ultimately never did business together. *Id*. at 819, 823. Here, the parties negotiated the Project Agreement, performed the Project Agreement (i.e., Entropy funded the project and Stasis Group performed testing, etc. pursuant to the Project Agreement), and contemplated future agreements and performance, which evidences intended future activity in Minnesota. In addition, the e-mails and phone calls in this case cannot be categorized as "scattered" or "incidental," rather they appear to be centered on the parties' relationship and performance of the Project Agreement.

witnesses, and the interests of justice. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In considering these factors, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id*. The burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).

As an initial matter, the parties dispute whether this action "might have been brought" in the District of New Mexico. In particular, Entropy questions whether Defendants Morton's and Radzinksy's contacts with the State of New Mexico are sufficient for the exercise of personal jurisdiction in that district. Cecchini submits that New Mexico can properly assert personal jurisdiction over him and Stasis Group based on his residence in New Mexico and Stasis Group's principal place of business in New Mexico. Cecchini then argues, without factual citation, that Morton works out of the New Mexico Office. (Doc. No. 6 at 16.) However, it is not clear from the record that all Defendants had sufficient contacts with New Mexico. Therefore, it is also not clear that this case "might have been brought" in New Mexico. On this basis alone, the Court concludes that transfer is not appropriate. Even so, the Court considers the relevant transfer factors.

"[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff*, 33 F. Supp. 2d at 1121 (citation omitted). Normally, there is a

presumption in favor of the plaintiff's forum. *Id.* Cecchini, however, advocates for transfer, claiming that Minnesota is only convenient for Entropy and that New Mexico is more convenient because Stasis Group's principal place of business is in New Mexico and Stasis Group produced the PCM building material in New Mexico. Entropy, however, asserts that Minnesota is not an inconvenient forum, especially because none of the parties reside in the same district and, instead, are located in Minnesota, California, and New Mexico. The Court finds that the convenience of the parties weighs in favor of maintaining this action in Minnesota because transfer to New Mexico would simply shift the inconvenience to Entropy and, conceivably, to other Defendants as well.

The convenience of witnesses is an important factor for the Court and the parties because it affects the access to sources of proof. In considering the convenience of witnesses, courts have focused on the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See id.* Cecchini argues that this factor weighs in favor of transfer because potential witnesses are in New Mexico, California, and Minnesota. In particular, Cecchini argues that witnesses familiar with the viability of the PCM product after testing are located in Berkeley, California, and New Mexico, and that no testing witnesses are located in Minnesota, making Minnesota an inconvenient forum. Entropy disagrees and submits that nearly all relevant witnesses are in Minnesota or California, including officers and employees of Entropy. In addition, Entropy points out that most third-party witnesses and documents will relate to Lawrence Berkeley National Lab in California (Servais Decl. ¶ 2), and that New Mexico will be an equally inconvenient forum for those

12

witnesses. The Court finds that fact witnesses will reside in Minnesota, New Mexico, and California. New Mexico will not be any more convenient than Minnesota for the balance of witnesses. In addition, the location of records and documents does not materially impact the convenience analysis in this case. Thus, the convenience of the witnesses does not weigh in favor of transferring this action to the District of New Mexico.

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. This factor is weighed "very heavily." *Id.* A number of relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice of law issues, and the advantages of having a local court determine questions of local law. *See Terra Int'l*, 119 F.3d at 696. Cecchini argues that the interests of justice weigh in favor of transfer. In particular, Cecchini claims that Entropy's choice of forum here should be afforded less deference because the forum is inconvenient, performance under the contract occurred outside of Minnesota, and the parties did not agree to a forum. In addition, Cecchini asserts that litigation costs would be less if litigated in New Mexico and that New Mexico courts would be able to apply Minnesota law to the contract claims.

The Court finds that a substantial part of the events or omissions giving rise to the claims in this action occurred in Minnesota. Therefore, the Court recognizes the interest in protecting Entropy's choice of forum. In addition, as explained above, Minnesota has an interest in providing a forum for Entropy. Moreover, the Court is not convinced that litigation costs would be less in New Mexico. On balance, the Court concludes that

maintaining the action here would promote the interests of justice, and the Court finds that this factor does not weigh in favor of transferring this action to the District of New Mexico.

For the above reasons, the Court denies Cecchini's motion to transfer.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Cecchini's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Doc. No. [4]) is respectfully **DENIED**.

Dated:  March 13, 2019                     s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge